UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ALIBEK ISLAMOV,
Petitioner,

v.

CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center, et al.,
Respondents.

Case No.: 26cv4219-LL-MSB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

[ECF No. 1]

Before the Court is Petitioner Alibek Islamov's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Response in opposition to the Petition [ECF No. 6], and Petitioner filed a Traverse [ECF No. 7]. For the reasons set forth below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner is a Chechen man and Russian national who came to the United States seeking asylum. Pet. ¶ 43. He applied for entry on July 13, 2021 at a port of entry. On July 16, 2021, after Petitioner was found not to be a flight risk or danger to the community, he was granted humanitarian parole so that he could enter the country and apply for relief. *Id.* ¶ 44. Soon after he entered, Respondents issued a Notice to Appear to Petitioner, which

began removal proceedings. *Id.* ¶ 45. Petitioner's removal proceedings were eventually terminated to allow him to process whatever claims were available to him through U.S. Citizenship and Immigration Services instead of through immigration court. *Id.*

Petitioner applied for asylum within the one-year requirement and he obtained work authorization. *Id.* ¶¶ 44, 46. While he was paroled, Petitioner started his own transportation business, paid taxes, supported his family, and complied with immigration check-in appointments. *Id.* ¶¶ 47, 48. He has no criminal history. *Id.* ¶ 54.

In March 2025, Petitioner was on his way to pick up his children from school when he was arrested without warning or previous notice. *Id.* ¶ 49; ECF No. 6 at 3 n.1. He was told that his "I-94" (parole) had expired and that he must be detained for the duration of his case. Pet. ¶ 49.

During his detention, Petitioner filed two habeas petitions. Petition for Writ of Habeas Corpus, *Islamov v. LaRose*, Case No. 25cv3390-LL-MSB (S.D. Cal. Dec. 2, 2025); Petition for Writ of Habeas Corpus, *Islamov v. LaRose*, Case No. 26cv2239-LL-AHG (S.D. Cal. Apr. 9, 2026). The first petition raised a claim of prolonged detention and the second was a challenge to the bond hearing. Pet. ¶ 55. The Court granted the first petition and denied the second. Order Granting Petition for Writ of Habeas Corpus, *Islamov v. LaRose*, Case No. 25cv3390-LL-MSB (S.D. Cal. Jan. 14, 2026); Order Denying Petition for Writ of Habeas Corpus, *Islamov v. LaRose*, Case No. 26cv2239-LL-AHG (S.D. Cal. June 25, 2026).

On July 23, 2026, Petitioner filed the instant Petition. Pet.

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case

by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III. DISCUSSION

Petitioner claims that when he was arrested and detained, his liberty was revoked without notice or a hearing in violation of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act. Pet. ¶¶ 56–72. Petitioner seeks a writ of habeas corpus directing Respondents to return him to his predetention status. *Id.* ¶ 74.

Respondents argue that the Petition should be dismissed for abuse of the writ because Petitioner raises a claim now that could have been raised in his first habeas petition. ECF No. 6. Respondents do not address the substantive arguments in the Petition.

### A. Abuse of the Writ

For a habeas petition brought under 28 U.S.C. § 2241, "[t]he doctrine of abuse of the writ generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (internal quotation marks and citation omitted). Under this doctrine, "a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Id.* "Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Sanders v. United States*, 373 U.S. 1, 18, 83 S. Ct. 1068, 1078, 10 L. Ed. 2d 148 (1963).

Petitioner contends that cause exists for this current claim because of the ineffective assistance of counsel in his first petition and the rapidly evolving law. ECF No. 7 at 3–6. He states that the first petition was not filed by current counsel, but instead by an attorney who had never previously filed a habeas petition in this district, the Central District of California, or the Eastern District of California. *Id.* at 3. Petitioner further contends that the *pro hac vice* attorney "was also learning the law with this petition." *Id.* Petitioner argues

that due to counsel's inexperience, the first petition never addressed the unlawfulness of Petitioner's arrest, but instead argued the issue of prolonged detention. *Id.* Additionally, Petitioner argues that when the first petition was filed on December 2, 2025, the "law surrounding detentions was only just being tested and district courts were trying to grapple with the issues regarding Parole, re-detention, unlawful arrest, and the appropriate remedies that were available" and that it "took many months for practitioners to understand what the appropriate arguments were for each case and what the appropriate remedy should be." *Id.* at 4.

The Court finds that upon these facts, Petitioner has shown cause for the failure to bring the due process claim alleging his unlawful arrest and detention in his earlier habeas petitions. In December of 2025, the volume of habeas petitions filed in federal district courts regarding immigration detention had recently rapidly increased. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164 (9th Cir. 2026) ("The government's change in policy has resulted in detained aliens filing thousands of habeas petitions in federal courts across the country, seeking bond hearings and possible release from detention."). The law on immigration detention was evolving and not clear in the absence of binding precedent on similar facts. *See Ozbalik v. LaRose*, No. 26-CV-4239-JES-SBC, 2026 WL 2455825, at *2 (S.D. Cal. Aug. 21, 2026) ("It is no secret that the number of habeas petitions in this District has risen rapidly in the past ten months, and that the law on such petitions was significantly less clear in December of 2025 than it is today."). The same counsel who filed Petitioner's first petition also filed the second petition, which concentrated on a challenge to a bond hearing. Due to inexperience and the state of the law, Petitioner's prior counsel failed to bring a claim that could have resulted in his release months ago without a bond hearing. On these facts, the Court finds excusable cause for failing to raise the unlawful arrest claim in his earlier petitions and that prejudice in the form of unconstitutional detention may result if the Court does not consider it on the merits. *See Ozbalik*, 2026 WL 2455825, at *2 (finding excusable cause for the petitioner's prior failure to raise a claim that could have been raised due to inexperience and evolving law). Accordingly, the Court

does not find it appropriate to dismiss the Petition under the doctrine of abuse of the writ and will consider the merits.

**B. Merits**

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted).

The Court finds that having been previously released on parole, Petitioner has a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

Although Petitioner's parole expired, "this private interest did not expire along with Petitioner's parole agreement." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136

(W.D. Wash. 2025). "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Id.* (citing *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)); *see also Morrissey*, 408 U.S. at 482 ("By whatever name, the liberty [of parole] is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal."). "That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a[n] individualized hearing prior to re-detaining the parolee." *Ramirez Tesara*, 800 F. Supp. 3d at 1136 (citing *Pinchi*, 792 F. Supp. 3d at 1032).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews*, 424 U.S. at 334–35. To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that the government's revocation of Petitioner's release without notification, reasoning, or an opportunity to be heard denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872

F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest was high as Petitioner's liberty was revoked without providing him a reason for revocation or giving him an opportunity to be heard. When Petitioner was arrested and detained, there was no indication that Petitioner had failed to abide by the conditions of his release or that circumstances have changed. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty was high because neither the government nor Petitioner had an opportunity to determine whether there was any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, was also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing was low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1130 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is also no indication that providing a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025))).

Therefore, because Respondents detained Petitioner by revoking his liberty without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sep. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful).

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013) (citing *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). Normally, the remedy for unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1154, 1156 (S.D. Cal. 2025) (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Sanchez*, 2025 WL 2770629, at *5 (same); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing). However, the facts of this case warrant a different remedy. The Court granted Petitioner's first petition on the basis of prolonged detention and ordered a bond hearing. After the immigration judge held a bond hearing and denied bond upon finding Petitioner posed a flight risk and danger to the community, this Court denied Petitioner's motion to enforce the habeas order, stating, "Mindful that this Court cannot reweigh the evidence, the Court finds that Petitioner has not shown by clear and convincing evidence that Respondents violated this Court's habeas order." Order Denying Petitioner's Motion to Enforce Habeas Order at 6, *Islamov v. LaRose*, Case No. 25cv3390-LL-MSB (S.D. Cal. June 25, 2026). Weighing the unconstitutional detention with the bond hearing determination, the Court finds it appropriate to order Petitioner's release, subject to reasonable conditions of supervision. *See Lujan*, 734 F.3d at 933.

/ / /

/ / /

## IV. CONCLUSION

For the reasons above, the Court **ORDERS**:

1. Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.[1]

2. Respondents shall immediately release Petitioner from custody subject to reasonable conditions of supervision.

3. Prior to any re-detention of Petitioner, he is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral immigration judge to determine whether detention is warranted. At such a hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025) (finding that the petitioner's initial release "reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk" and so if the government initiates re-detention, "it follows that the government should be required to bear the burden of providing a justification for the re-detention"); *Pinchi*, 792 F. Supp. 3d at 1038 (ordering that before the petitioner can be re-detained, she must be provided with a pre-detention bond hearing before a neutral immigration judge and that she may not be detained "unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms").

/ / /

/ / /

/ / /

/ / /

---

[1] Having decided this Petition on due process grounds, the Court declines to address Petitioner's other grounds for relief. Additionally, Petitioner's request for attorney's fees and costs under the Equal Access to Justice Act is DENIED WITHOUT PREJUDICE.

4. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: September 8, 2026

Honorable Linda Lopez
United States District Judge